UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY PATRICK
LUNDBY,

               Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

Case No. 2:16-cv-13508
District Judge Avern Cohn
Magistrate Judge Anthony P. Patti

## RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 19) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 22)

**I.     RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 19), **GRANT** Defendant's motion for summary judgment (DE 22),

and **AFFIRM** the Commissioner's decision.

**II.     REPORT**

      Plaintiff, Jeffrey Patrick Lundby, brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his applications for social security disability insurance

(DI) benefits and supplemental security income (SSI).  This matter is before the

United States Magistrate Judge for a Report and Recommendation on Plaintiff's

motion for summary judgment (DE 19), the Commissioner's cross motion for summary judgment (DE 22) and the administrative record (DE 12).

## A.    Background

Plaintiff filed his applications for DI and SSI benefits on August 28, 2013, alleging that he has been disabled since August 3, 2009, at age 44.  (R. at 80-81, 152-59.)  Plaintiff's applications were denied, and he sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 62-81, 85-103.)  ALJ Richard L. Sasena held a hearing on January 27, 2015 ─ at which Plaintiff was represented by counsel.  (R. at 29-61.)  Following the hearing, Plaintiff submitted additional medical evidence, which was entered into the record, and the ALJ asked Plaintiff to submit to additional consultative physical and psychological examinations, and the resulting reports were entered into the record.  (R. at 699-731.)  The ALJ considered all of the evidence and determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 9-28.)  On August 15, 2016, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Sasena's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on September 28, 2016. (DE 1.)

2

**B.     Plaintiff's Medical History**

Plaintiff's combined medical records span the period from August 17, 2009

through April 8, 2015, and include complaints of back, shoulder, elbow and hand

pain, stomach problems, and depression. (R. at 238-731.)  The 493 pages of

medical records are mostly comprised of hospital and treatment records, but also

include November 8, 2013 and April 7, 2015 consultative examinations (CEs) by

internist Mary Wood, M.D. (R. at 330-38, 718-31) and an April 8, 2015 CE by

psychologist Gerald Kirzner, Ph.D. (R. at 707-17).

These medical records will be discussed as necessary below.

**C.     Hearing Testimony**

Plaintiff testified at the January 27, 2015 hearing before ALJ Sasena.  (*See*

R. at 29-61.)  As Plaintiff's credibility is not an issue currently before this Court, I

will forego a summary of his testimony here and only cite it as necessary below.

**D.     The Administrative Decision**

On June 26, 2015, ALJ Sasena issued an "unfavorable" decision.    At **Step**

**1** of the sequential evaluation process,[1] the ALJ found that Plaintiff has not

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4),
416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's
review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully
considered, the sequential review considers and answers five questions:

    1.     Is the claimant engaged in substantial gainful activity?

engaged in substantial gainful activity since August 3, 2009, the alleged onset date.

(R. at 14.)  At **Step 2**, the ALJ found that Plaintiff has the following severe

impairments:  degenerative joint disease, degenerative disc disease, a history of

abdominal pain, and major depressive disorder.  (R. at 14-15.)  At **Step 3**, the ALJ

found that Plaintiff does not have an impairment or combination of impairments

that meets or medically equals the severity of one of the listed impairments.  (R. at

15-16.)  Prior to **Step 4** of the sequential process, the ALJ determined that Plaintiff

has the residual functional capacity ("RFC")[2] to:

> perform light work … except that he can occasionally climb, balance,
> stoop, kneel, crouch, and crawl.  He should avoid concentrated
> exposure to unprotected heights, moving machinery, and vibrating
> tools.  The claimant is limited to simple, routine, repetitive tasks that
> require little judgment and can be learned in a short period of time.
> The claimant should have no interaction with the general public, but

---

2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet
     or equal the criteria of an impairment set forth in the Commissioner's
     Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the
     claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and
     residual functional capacity, can the claimant perform other work
     available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573
F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

> can have occasional interaction with coworkers.  He can work in
> proximity to others, but not as a team member.  The claimant requires
> the option to sit or stand, and change positions after fifteen minutes.

(R. at 16-21.)  At **Step 4**, the ALJ concluded that Plaintiff has past relevant work as

a carpenter, but that he is unable to perform it.  (R. at 22.)  At **Step 5**, the ALJ

found that, considering Plaintiff's age, education, work experience and RFC, there

are jobs that exist in significant numbers in the national economy that Plaintiff can

perform.  (R. at 22-23.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

Plaintiff claims that the ALJ erred in his:  **(1)** evaluation of Plaintiff's

treaters' opinions; **(2)** failure to account for Plaintiff's limitations in the RFC on

fine and gross manipulation, as well as reaching overhead; and **(3)** evaluation of

Plaintiff's mental limitations.  (DE 19 at 16-24.)  The Commissioner opposes

Plaintiff's motion, asserting that substantial evidence supports the Commissioner's

decision.  (DE 22 at 1, 6-18.)  I will address each argument in turn.

### 1.    Substantial Evidence Supports the ALJ's Evaluation of the Treating Physician Opinions

Plaintiff argues that the ALJ improperly gave "limited weight" to the

opinions of two treating physicians, Dr. Andre Smith and Dr. Marsha Billies, and

that each physician suggested limitations far in excess of those included in the

ALJ's RFC assessment.  (DE 19 at 16-21.)  The Commissioner responds that the

ALJ's evaluation of the record medical evidence is supported by substantial

evidence.  (DE 22 at 6-12.)

The ALJ must consider all medical opinions that he or she receives in

evaluating a claimant's case.  20 C.F.R. § 416.927(b).  The regulations define

medical opinions as "statements from physicians . . . that reflect judgments about

the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  Administrative law judges "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . .[,]" but "are not required to adopt any prior administrative medical findings[.]"  20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[3]  *Wilson v. Comm'r*

---

[3] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues reserved to the Commissioner include:

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not

give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

However, while an ALJ must "always give good reasons in [the ALJ's]

notice of determination or decision for the weight [the ALJ] give[s] your treating

source's opinion,"  20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the

treating source's medical opinion and the reasons for that weight,"  *Friend v.*

*Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal

quotation omitted), there is no *per se* rule that requires a written articulation of

each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§

---

1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
2. What an individual's RFC is;
3. Whether an individual's RFC prevents him or her from doing past relevant work;
4. How the vocational factors of age, education, and work experience apply; and
5. Whether an individual is "disabled" under the Act.

*Id.*

404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010).  In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547); *see also, Betty v. Comm'r of Soc. Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

For the reasons stated below. I find that the ALJ's opinion gives good reasons for discounting the medical opinions at issue and that the Commissioner has met the goal of § 1527(c).  *See Francis*, 414 F. App'x at 805.  I also find that the opinion "'permits the claimant and [this] reviewing court a clear understanding of the reasons for the weight given [to the] treating physician's opinion[.]'" *See id.* (quoting *Friend*, 375 F. App'x at 550).

10

Dr. Billies, one of Plaintiff's treating physicians, completed a disability questionnaire, dated September 3, 2013, in which she reported that Plaintiff's degenerative joint disease and abdominal issues would limit him to working only one hour per day, standing for 15 minutes at a time, walking and standing for 60 minutes in a day, sitting for one hour at a time for two hours in a day, and lifting up to 20 pounds occasionally, but that he would need to take frequent breaks because of stomach issues.  She opined that Plaintiff was not capable of performing a sedentary low stress job on a 40-hour work week on a regular sustained basis.  (R. at 319.)

On September 9, 2013, Dr. Smith, another of Plaintiff's treating physicians, completed a questionnaire nearly identical to Dr. Billie, but opined that Plaintiff was able to lift only five pounds.  (R. at 318.)

Dr. Billies completed a second questionnaire in February 2015, after the hearing before the ALJ, in which she opined that Plaintiff was unable to work any hours in a day, could only walk or stand for a total of 30 minutes in a day, sit for a total of 60 minutes in a day, and lift no more than 10 pounds occasionally.  (R. at 699.)

Plaintiff argues that the opinions of both treating physicians are extremely consistent with each other, and that the record includes a number of objective test results which supports the doctors' opinions, including x-rays and MRIs and a

11

nerve conduction study during the 2009 and 2013 through 2014 time periods,

revealing mild right L5-S1 radiculopathy, moderate stenosis, degenerative arthritic

changes in his hands, foot and spine, moderate stenosis, and degenerative

irregularity in his shoulder.  (DE 19 at 20-21.)

Here, the ALJ did in fact consider and weigh Drs. Billies' and Smith's

opinions; however, he afforded them limited or little weight, finding that their

extreme limitations were inconsistent with Plaintiff's unremarkable physical

examinations and mild objective evidence such as x-rays and MRI scans, and

Plaintiff's own statements regarding his capabilities, including that he could walk

or stand up to three hours in a day and is able to sit for extended periods, as long as

he has a comfortable chair.  Plaintiff further testified that he could go fishing, play

cards with friends, walk his dogs and take pontoon rides, and that he could lift up

to 40 pounds occasionally.  (R. at 20-21.)  The ALJ thoroughly analyzed the

medical record, including the physical examinations, office treatment records and

the objective test results, in concluding that Drs. Billies' and Smith's opinions

were entitled to limited weight.  (R. at 18-20.)  He noted that the August 2009 MRI

shows multiple bulging discs and a protruding disc, that the nerve conduction study

was largely normal and suggested mild L5 and S1 radiculopathy, and that the

physical examination at that time revealed that Plaintiff maintained a normal gait,

was able to toe and heel walk, and fully squat and return upright.  (R. at 18, 290,

465, 498-99.)  An October 2009 x-ray of Plaintiff's left hand showed only

"[m]inimal degenerative osteoarthritis of the first carpal" (R. at 419), and x-rays of

Plaintiff's elbow and hands in December 2009 showed only mild bilateral hand

osteoarthritis and mild tennis elbow.  (R. at 18, 470.)  Dr. Jean-Paul Guiboux,

M.D., observed at that time that Plaintiff is "not really doing anything for these

problems," suggested that he take some over-the-counter Advil or Aleve, and

declined Plaintiff's request to assist him in obtaining disability because he has only

"some minor arthritis."  (*Id.*)  A physical examination in January 2010 was

essentially normal (R. at 18, 487-88), and Plaintiff participated in injection and

physical therapy until he was discharged from physical therapy in April 2010,

having met all of this goals and reporting that he was going to be returning to work

as a carpenter.  (R. at 18, 438.)

The ALJ noted, and Plaintiff does not dispute, that the record indicates that

Plaintiff periodically complained of joint pain in 2010 and 2011, but that it does

not reflect significant medical treatment during 2012.  (R. at 18.)

The ALJ further considered the May 2013 MRI of Plaintiff's lumbar spine,

which identified mild spondylotic degenerative changes without evidence of severe

central canal or neural foraminal compromise, and that physical examinations in

August and December 2013 revealed that his spine was within normal limits, with

no swelling, deformity, or tenderness, normal range of motion, and full muscle

strength in all muscle groups. (R. at 18, 298-99, 371, 411.)  A November 2013 x-ray of Plaintiff's right hand revealed only a "[r]emote posttraumatic deformity" (old fracture) of the fifth metacarpal, and an x-ray of Plaintiff's right foot identified degenerative changes but not acute osseous abnormality.  (R. at 18, 379-80.) Additionally, an April 2014 x-ray and MRI of Plaintiff's left shoulder revealed minimal degenerative irregularity and identified a tiny rotator cuff tear and mild tendinosis.  (R. at 18, 365, 567.)  Plaintiff reported that he had no health concerns at his December 2014 wellness exam and that his pain medications provided him 70-80% relief.  Later that month he presented as crying, limping and complaining of right foot pain, but his physical exam was otherwise largely normal.  Notably, as the ALJ pointed out, Plaintiff was prescribed Xanax "to address his reported anxiety over his disability claim[,]" or as his treater put it, "his anxiety over the fact that he is very nervous *about getting the disability*." (R. 19, 530, 537-38) (emphasis added).

The ALJ also considered the consultative examinations by Dr. Mary Wood, M.D. in November 2013 and April 2015.  (R. at 19-20, 331-38, 719-31.)  The November 2013 physical examination was unremarkable, revealing no paraspinal tenderness or spasm, slightly reduced range of motion in his left shoulder and lumbar spine, walking without assistance and on toes and heels, and ability to perform a full range of postural, gross and fine motor activities.  Dr. Wood

14

diagnosed possible bursitis of the left shoulder and GERD controlled with medication.  (R. at 19, 331-38.)  In April 2015, Dr. Wood noted no significant changes from the prior examination.  Plaintiff was tearful and complained of severe pain, and Dr. Wood noted some joint pain and swelling and reduced lumbar range of motion, but Plaintiff's gait was normal, he was able to walk on toes and heels, and the neurological examination was within normal limits.  (R. at 19, 719-31.)  The ALJ gave Dr. Wood's opinion significant weight because it was based on her thorough examinations, but also gave additional consideration to Plaintiff's testimony regarding his abilities, including that he could be on his feet "maybe a couple, three hours" and that he could sit "as long as [he's] in like a really comfortable chair," in finding that he retained the ability to perform a restricted form of light work with a sit/stand option.  (R. at 20, 41.)

The ALJ properly relied on the record evidence in finding that that treating physicians' opinions were entitled to limited weight.  *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (the ALJ is "not bound by conclusory statements of doctor, particularly where they are unsupported by detailed objective criteria and documentation") (internal quotation omitted); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (an ALJ's finding that a medical opinion conflicts with other evidence in the record is sufficient to discount the opinion); *see also Buchanon v. Comm'r of Soc. Sec.*, No. 13-CV-14288, 2015 WL 927831, at *8

15

(E.D. Mich. Mar. 4, 2015) (ALJ properly assigned little weight to treating physician's ultimate conclusion as to the severity of plaintiff's limitations because "it was not supported by his own examination findings or by the record as a whole").  It is not this Court's role to re-weigh the evidence.  Further, the existence of evidence in the record supporting an opposite conclusion is not enough for a reversal by this Court.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (concluding that "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.").

In addition, the ALJ's consideration of Plaintiff's admission that he could walk four to five blocks at a time and walk for three hours at a time, and his activities of daily living, including shopping, fishing, driving, fixing meals, cleaning, walking his dog, taking pontoon rides, occasionally lifting between 30 and 40 pounds, and playing cards (R. at 15, 20-21, 41, 200-04), was not in error. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (concluding that the ALJ properly determined that the claimant's "subjective complaints were not credible in light of her ability to perform other tasks," including walking around her yard, riding a bicycle, going to church, going on vacation, cooking, vacuuming, and making beds.); *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (plaintiff who *could* drive a car for short distances, walk four or five blocks per day, stand for approximately 30 minutes and sit for

16

one and one-half hours, could perform light work).  These activities are relevant

regardless of whether they reflect Plaintiff's ability to work full-time.  *See*

*Monville v. Comm'r of Soc. Sec.*, No. 16-12195, 2017 WL 4081854, at *4 (E.D.

Mich. Sept. 15, 2017) (noting that the Social Security regulations expressly require

an ALJ to consider daily activities when assessing the claimant's credibility with

respect to his pain and symptom).  Thus, the ALJ cited specific conflicts between

Drs. Smith's and Billies' opinions and substantial medical, lifestyle and opinion

evidence, and substantial evidence supports his decision to afford those opinions

limited weight.

## 2. Substantial Evidence Supports the ALJ's RFC Finding

Plaintiff argues that the ALJ erred in omitting fine and gross manipulations

from the RFC assessment, as well as limitations with reaching overhead.  (DE 19

at 23-24.)  He asserts that Dr. Smith limited him to only occasional fine and gross

manipulation with his right hand, precluded fine or gross manipulation with his left

hand, and limited him to occasional raising of either arm above the shoulder, and

that Dr. Billies restricted him to occasional fine manipulation with the right hand

and gross manipulation with either hand, no fine manipulation with his left hand,

and limitations with respect to raising his arms over shoulder level.  (*Id.*, citing R.

at 318-19.)  He further states that Dr. Wood limited him to occasional pushing and

17

pulling bilaterally, and only frequent handling, fingering, and feeling.  (*Id.*, citing

R. at 728.)  He complains that the ALJ's RFC does not include those limitations.

Plaintiff's RFC is "the most [he or she] can still do despite the physical and

mental limitations resulting from [his or] her impairments."  *Poe v. Comm'r of Soc.*

*Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a),

416.945(a).  The determination of Plaintiff's RFC is an issue reserved to the

Commissioner and must be supported by substantial evidence.  20 C.F.R. §§

404.1527(e), 416.927(e).  "'ALJs must not succumb to the temptation to play

doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of*

*Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citation omitted).  Pursuant to

Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each
> conclusion, citing specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations).  In assessing
> RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular and
> continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent
> work schedule), and describe the maximum amount of each work-
> related activity the individual can perform based on the evidence
> available in the case record. The adjudicator must also explain how any
> material inconsistencies or ambiguities in the evidence in the case
> record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a

'function-by-function evaluation' to determine a claimant's RFC, case law does

not require the ALJ to discuss those capacities for which no limitation is alleged."

18

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Instead, the ALJ "'need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."' *Id.* (citations omitted).

As discussed above, the ALJ adequately explained why he gave only limited weight to Drs. Billies' and Smith's opinions, including their opinions as to limitations regarding Plaintiff's use of his upper extremities, explaining that their opinions were inconsistent with Plaintiff's largely unremarkable physical examinations and the objective evidence revealing only mild osteoarthritis in his upper extremities, and Plaintiff's own testimony as to what he can do. (R. at 19-21, 419, 470). Similarly, Dr. Wood observed during her physical examinations of Plaintiff that his neurological examination was within normal limits, with only "possible bursitis" and slightly reduced range of motion, that he could push, pull, tie shoes, button clothes, make a fist, pick up a coin, and had essentially full range of motion in his shoulders and hands. (R. at 331-38, 719-25.) Accordingly, the ALJ's RFC is supported by substantial evidence.

### 3.   **Mental Limitations**

Plaintiff argues that the ALJ improperly discounted the opinions of his treating therapist, Lisa Wilmot, and instead purported to give "significant weight"

to the opinions of the consulting examiner, psychologist Dr. Gerald Kirzner, but then "adjusted" that opinion to find that "the claimant's limitations are moderate, rather than marked." (DE 19 at 24-26, citing R. at 21.)

First, the ALJ was not required to give Ms. Wilmot's opinion controlling weight because a therapist is not properly classified as an "acceptable medical source" but rather an "other source." *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Englebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 399 (6th Cir. 2014) (citing 20 C.F.R. § 404.1513(d)). The social security regulations require that information from "other sources" be "considered." *See Erbland v. Comm'r of Soc. Sec.*, No. 1:13-CV-93, 2015 WL 5578020, at *3 (W.D. Mich. Sept. 22, 2015) (citing 20 C.F.R. §§ 404.1513, 416.93). This is not a demanding standard and was easily met here. It is apparent that the ALJ gave serious consideration to Ms. Wilmot's opinion, but he disagreed with her extreme limitations, finding they were vague and conclusory and inconsistent with Plaintiff's own statements. (R. at 21.) Thus, the ALJ properly considered Ms. Wilmot's opinions and gave them little weight and thus satisfied his obligations under the Social Security Act with respect to her opinions.

Further, the ALJ properly evaluated Dr. Kirzner's opinion and gave it significant weight, even though he found Plaintiff's limitations to be moderate rather than marked. (R. at 21.) The ALJ explained that although Dr. Kirzner

20

opined that Plaintiff has impaired social activities, Plaintiff stated in his function report that he gets along well with family, friends, and neighbors, and has no problems getting along with authority figures.  (R. at 15, 204-05, 714.)  And while Dr. Kirzner found that Plaintiff would have difficulties understanding, remembering, and carrying out instructions, he also found that Plaintiff retains the ability to handle his own resources, and Plaintiff reports that he is able to drive, understand instructions, and pay attention.  (R. at 15-16, 202-04, 713, 715).  Further, Plaintiff demonstrated the ability to remember numerals and objects, as well as perform serial sevens and other mathematical calculations.  (R. at 16, 709-10.)  The ALJ also noted that another mental health provider, Erin Crow, found Plaintiff to "ha[ve] normal perception, unremarkable thought processes, exhibited fair judgment, fair impulse control, and good insight."  (R. at 20, 509.)  Thus, the ALJ provided good reasons for the weight he gave Ms. Wilmot's and Dr. Kirzner's opinions, and for discounting the opinion that Plaintiff had "marked" limitations in his ability to carry out complex instructions, interact appropriately with the public, and respond appropriately to usual work situations and to changes in routine work setting, and his opinion is well within the "zone of choice" accorded to the ALJ. *See Mullins v. Comm'r of Soc. Sec.*, No. 2:14-CV-13288, 2015 WL 3441163, at *12 (E.D. Mich. May 28, 2015) (ALJ provided good reasons for discounting opinion that plaintiff had "marked" limitations in concentration, persistence and

pace); *Gray v. Comm'r of Soc. Sec.*, No. 11-12075, 2012 WL 2374225, at \*6 (E.D. Mich. May 21, 2012) (affirming decision because the ALJ's rejection of the doctor's "marked" findings is well supported and well explained), *report and recommendation adopted*, 2012 WL 2371411 (E.D. Mich. June 22, 2012).

### G. Conclusion

In sum, the ALJ's opinion is supported by substantial evidence. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 19), **GRANT** Defendant's motion for summary judgment (DE 22), and **AFFIRM** the Commissioner of Social Security's decision.

## III.  PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: January 16, 2018          s/Anthony P. Patti
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record
on January 16, 2018, electronically and/or by U.S. Mail.

                                 s/Michael Williams
                                 Case Manager for the
                                 Honorable Anthony P. Patti