UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY PATRICK LUNDBY,

    Plaintiff,        Case No: 16-13508

v.              HON. AVERN COHN

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

**MEMORANDUM AND ORDER ADOPTING
REPORT AND RECOMMENDATION (Doc. 23), OVERRULING
PLAINTIFF'S OBJECTIONS (Doc. 24),
DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (Doc. 19),
GRANTING THE COMMISSIONER'S
MOTION FOR SUMMARY JUDGMENT (Doc. 22),
AFFIRMING THE ALJ'S DECISION DENYING
<u>BENEFITS, AND DISMISSING THE CASE</u>**

**I. INTRODUCTION**

This is a Social Security case. Plaintiff Jeffrey P. Lundby (Lundby) appeals the final decision of the Commissioner of Social Security (Commissioner) denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Lundby claims that he has been disabled since August 3, 2009, due to stomach problems, depression, and back, shoulder, elbow, and hand pain.

The parties filed cross motions for summary judgment. (Docs. 19, 22). The motions were referred to a magistrate judge (MJ) for a report and recommendation (MJRR). After

the MJRR recommended that Lundby's motion be denied and the Commissioner's motion be granted, Lundby filed timely objections. For the reasons that follow, the Court overrules Lundby's objections, adopts the MJRR, denies Lundby's motion for summary judgment, grants the Commissioner's motion, and affirms the administrative law judge's (ALJ) decision denying benefits.

## II. BACKGROUND

### A. Procedural History

As the parties have not objected to the MJ's recitation of the procedural history and administrative record, the Court adopts that portion of the MJRR as if fully set forth herein. A brief history of the procedural posture follows.

Lundby applied for DIB and SSI on August 28, 2013. He alleged disability as of August 3, 2009.

When the Commissioner denied the claims, Lundby requested a hearing. On January 27, 2015, Lundby appeared with counsel before an ALJ. At the hearing, Lundby testified on his own behalf. Following the hearing, Lundby submitted additional medical evidence, including reports from additional consultative physical and psychological examinations ordered by the ALJ. All additional evidence was entered into the record.

The ALJ issued a written decision denying Lundby's claims, finding that Lundby was not disabled. Lundby's date last insured (DLI) is December 31, 2014.

The Appeals Council denied Lundby's request for review, rendering the decision of the Commissioner final. Lundby appeals from that decision.

### B. The ALJ's Decision

The MJRR summarized the ALJ's decision denying benefits:

On June 26, 2015, ALJ Sasena issued an "unfavorable" decision. At Step 1 of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 3, 2009, the alleged onset date. At Step 2, the ALJ found that Plaintiff has the following severe impairments: degenerative joint disease, degenerative disc disease, a history of abdominal pain, and major depressive disorder. At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Prior to Step 4 of the sequential process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC")[2] to:

> [P]erform light work . . . except that he can occasionally climb, balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to unprotected heights, moving machinery, and vibrating tools. The claimant is limited to simple, routine, repetitive tasks that require little judgment and can be learned in a short period of time. The claimant should have no interaction with the general public, but can have occasional interaction with coworkers. He can work in proximity to others, but not as a team member. The claimant requires the option to sit or stand, and change positions after fifteen minutes.

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see Colvin v. Barnhart, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Henley v. Astrue, 573 F.3d 263, 264 (6th Cir. 2009); Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001).

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 239 (6th Cir. 2002).

At Step 4, the ALJ concluded that Plaintiff has past relevant work as a carpenter, but that he is unable to perform it. At Step 5, the ALJ found that, considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. 23 at 3-5).

### C. The Parties' Arguments on Summary Judgment

#### 1. Lundby's Arguments

Lundby made three arguments to show that the ALJ's decision was not supported by substantial evidence. First, Lundby said that the ALJ failed to properly apply the treating medical source rule and give controlling weight, rather than "limited weight," to the opinions of Lundby's treating physicians Dr. Smith and Dr. Billies. Lundby said the ALJ should have given controlling weight to the two treating opinions because they were consistent with one another and with all other medical evidence, and they imposed limitations that were far in excess of those in the RFC.

Second, Lundby said that the ALJ failed to account for his limitations on fine and gross manipulation, and reaching overhead. Lundby said that even though every physician offered an opinion that Lundby had limited use of his upper extremities, the RFC neither acknowledged those limitations nor incorporated them.

Finally, Lundby said that the ALJ's decision regarding his mental limitations was unsupported by substantial evidence because the opinion of his treating therapist, Lisa Wilmot, was improperly afforded "limited weight," while the opinion of a consulting examiner, Dr. Kirzner, was afforded "significant weight." Further, Lundby said that despite assigning Dr. Kirzner's opinion "significant weight," the ALJ improperly assumed the role

4

of doctor by "adjust[ing]" it to find that "the claimant's limitations [we]re moderate, rather than marked in nature."

## 2. The Commissioner's Arguments

In his motion, the Commissioner said that the decision denying benefits was supported by substantial evidence. First, the Commissioner said that the ALJ properly offered "limited weight" to the treating opinions of Dr. Smith and Dr. Billies because they were inconsistent with unremarkable physical examinations, mild objective evidence, Lundby's testimony, and the consulting opinion of internist Dr. Wood.

Second, the Commissioner asserted that the ALJ did not err in omitting Lundby's limitations on fine and gross manipulation and reaching overhead because the ALJ noted that physical examinations were largely unremarkable, and Dr. Wood found that Lundby had a full range of gross and fine motor activities.

Finally, the Commissioner said that the ALJ properly afforded treating therapist Wilmot's opinion "limited weight" because it was vague and inconsistent with Lundby's own testimony about his limitations. The Commissioner also said that the ALJ did not improperly assume the role of doctor by scaling back Dr. Kirzner's consulting opinion because in light of Lundby's own admissions, moderate limitations were more reasonable than marked limitations.

## D. The MJRR

The MJRR rejected Lundby's arguments. First, the MJRR determined that the ALJ gave good reasons for affording limited weight to the assessments done by treating physicians Dr. Billies and Dr. Smith. Specifically, the MJRR explained that the ALJ adequately considered and analyzed the treating opinions, and correctly found that they

5

imposed extreme limitations that were inconsistent with other substantial evidence in the record, including multiple unremarkable physical examinations, mild objective evidence such as x-rays and MRI scans, and Lundby's own statements regarding his capabilities. For example, Lundby testified that he could walk four to five blocks at a time, walk or stand up to three hours a day, and sit for extended periods in a comfortable chair. Lundby also testified that his daily activities included shopping, fishing, driving, fixing meals, cleaning, walking his dog, taking pontoon rides, playing cards, and occasionally lifting between 30 and 40 pounds. Further, the ALJ considered that consultative examiner Dr. Guiboux declined Lundby's request to assist him in obtaining disability in 2009 because he had only "some minor arthritis." The MJRR's analysis supported the ALJ's determination that the record contradicted Dr. Billies' and Dr. Smith's findings.

Second, the MJRR determined that substantial evidence supported the ALJ's finding that Lundby was capable of performing light work with a sit/stand option. Specifically, the MJRR explained that the ALJ did not err in omitting limitations of fine and gross manipulations and reaching overhead from his RFC assessment. The MJ explained that because the ALJ gave limited weight to Dr. Billies' and Dr. Smith's treating opinions, limited weight was appropriately extended to include their limitations on Lundby's use of his upper extremities. The ALJ also relied on the consultative physical and neurological examinations done by internist Dr. Wood, who found that Lundby could push and pull, and had essentially a full range of motion in his shoulders and hands.

Third, the MJRR determined that the ALJ gave good reasons for affording limited weight to the mental assessment done by treating therapist Ms. Wilmot, and appropriately detracted from the significant weight given to the mental assessment done

6

by consultative psychologist Dr. Kirzner. Specifically, the MJRR explained that the ALJ was not required to give controlling weight to Ms. Wilmot's treating opinion, and after giving it "serious consideration," he appropriately disagreed with her extreme limitations because they were vague, conclusory, and inconsistent with Lundby's own testimony. Further, the MJRR explained that the ALJ properly gave Dr. Kirzner's opinion significant weight, even though the ALJ found Lundby's mental limitations to be moderate rather than marked, because Lundby stated that he gets along well with authoritative figures, and Dr. Kirzner found that Lundby retained the ability to understand instructions and pay attention. The ALJ also relied on the consultative opinion of mental health provider Erin Crow, who found that Lundby "ha[d] normal perception, unremarkable thought processes, exhibited fair judgment, fair impulse control, and good insight."

Thus, the MJRR recommended granting the Commissioner's motion, denying Lundby's motion, and affirming the ALJ's decision denying benefits.

### E. Lundby's Objections to MJRR

Lundby has three objections to the MJRR. First, Lundby says the MJ improperly excused the ALJ's erroneous application of the treating source rule, allowing him to "play doctor," and render his own independent medical opinion. Lundby further says that even if his admissions regarding his capabilities and daily activities are true, they do not permit the ALJ's RFC finding of light work for forty hours per week. Finally, Lundby says a consultative opinion by Dr. Wood did not justify the ALJ's decision to disregard the treating source rule because it was inconsistent with two treating opinions, and even the ALJ did not adopt it.

Second, Lundby says the MJ improperly excused the ALJ's failure to account for Lundby's limitations on fine and gross manipulation and reaching overhead in his RFC assessment. Lundby says that although every physician offered an opinion limiting the use of his upper extremities, the MJ excused the ALJ's failure to acknowledge or incorporate them in his RFC assessment. Instead, Lundby says the MJ "provided the analysis the ALJ did not[,]" which the Court is precluded from doing. Finally, Lundby says the MJ erred in finding that limitations on his upper extremities were never alleged, and in ignoring those imposed by Dr. Wood, namely that Lundby was "limited . . . to occasional pushing and pulling bilaterally, and only frequent handling, fingering, and feeling."

Third, Lundby says the MJ improperly permitted the ALJ to "play doctor" in establishing Lundby's mental limitations because after noting that he gave psychologist Dr. Kirzner's consultative opinion "significant weight[,]" the ALJ adjusted Dr. Kirzner's opinion, which imposed mostly "marked" limitations, to only "moderate" limitations. Further, Lundby says the MJ erred in allowing the ALJ to merely review Dr. Kirzner's findings and ascribe his own significance and weight to them.

## IV. STANDARD OF REVIEW

### A. Objections to MJRR

A district court must conduct a *de novo* review of the parts of a MJRR to which a party objects. 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." Id. The requirement that district judges conduct a *de novo* review and be the final arbiters of matters referred to a magistrate judge is jurisdictional. United States

8

v. Shami, 754 F.2d 670, 672 (6th Cir. 1985); Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

### B. Commissioner's Disability Determination

Judicial review of a Social Security disability benefits application is limited to determining whether "the commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. Brainard v. Sec'y of HHS, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It is "more than a scintilla but less than a preponderance." Consol. Edison Co. v. NLRB, 305 U.S. 197, 399 (1938). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Casey v. Sec'y of HHS, 987 F.2d 1230, 1233 (6th Cir. 1993); Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009). The substantial evidence standard is deferential and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference with the courts." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

When determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must consider the entire record as a whole. Futernick v. Richardson, 484 F.2d 647, 649 (6th Cir. 1973). If the Appeals Council declines to review the ALJ's decision, the court's review is limited to the record and

evidence before the ALJ, Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993), regardless of whether the ALJ actually cited to the evidence. Walker v. Sec'y of HHS, 884 F.2d 241, 245 (6th Cir. 1989). Nonetheless, there is no requirement that the reviewing court discuss all evidence in the record. Kornecky v. Comm'r of Soc. Sec., 167 F. App'x. 496, 508 (6th Cir. 2006).

## V. ANALYSIS

### A. First Objection

Lundby's objections to the MJRR are without merit. Lundby's first objection is that the MJ erred in excusing the ALJ's application of the treating source rule because the ALJ did not adopt largely similar opinions by two treating sources, gave greater weight to a consultative opinion, and did not actually adopt the findings of any of the three physicians. The Court addresses each of these three arguments in turn.

An ALJ is required to give controlling weight to treating source opinions if they are "supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." Hensley v. Astrue, 573 F.3d 263, 266 (6th Cir. 2009) (citing Wilson v. CSS, 378 F.3d 541, 544 (6th Cir. 2004)); see also 20 C.F.R. § 404.1527(c)(2). However, if there is contradicting substantial evidence, an ALJ may reject all or some of the treating opinions' conclusions, Warner v. Commissioner of Social Sec., 375 F.3d 387, 391-392 (6th Cir. 2004), as long as the ALJ provides "good reasons" for doing so. Wilson, 378 F.3d at 547; 20 C.F.R. § 404.1527(c)(2). An ALJ must explain what weight was given and why, Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam), and in doing so, must consider the: 1) "length of the . . . relationship"; 2) "frequency of examination"; 3) "nature

and extent of the treatment"; 4) "supportability of the opinion"; 5) "consistency . . . with the record as a whole"; and 6) "specialization of the treating source." Wilson, 378 F.3d at 544; see also 20 C.F.R. § 404.1527(c). There is no *per se* rule requiring a written articulation of each of the six factors; it is sufficient that the ALJ considered all that were relevant to the weight determination. Tilley v. Comm'r of Soc. Sec., 394 F. App'x 216, 222 (6th Cir. 2010).

First, the MJ correctly found that the ALJ's decision to give less than controlling weight to the treating opinions of Dr. Billies and Dr. Smith was appropriate. The ALJ properly applied the treating source rule by discounting the treating opinions because they were unsupported by the medical record and inconsistent with other substantial evidence. For example, the ALJ explicitly stated that he afforded the treating opinions limited weight because their extreme limitations were not supported by Lundby's unremarkable physical examinations, nor by mostly mild objective evidence, such as x-rays and MRI scans. Further, the ALJ noted that the treating opinions were inconsistent with Lundby's own statements regarding his capabilities, including that he could walk or stand up to three hours in a day and was able to sit for extended periods in a comfortable chair. The ALJ also cited Lundby's testimony that he could go fishing, play cards, walk his dogs, take pontoon rides, and lift up to 40 pounds occasionally. The ALJ utilized these daily activities in tailoring Lundby's work limitations and crafting his credibility determination, stating that they "[we]re consistent with basic work functions," and undermined his claim that he "ha[d] problems using his hands because of arthritis." (Doc.

11

12 at 17, 20).[3] The fact that the two treating opinions were essentially the same does not make their findings any less contradictory with the substantial evidence cited by the ALJ. Thus, the treating opinions were not entitled to controlling weight.

Second, the MJ correctly found that the ALJ provided good reasons for affording limited weight to Dr. Billies' and Dr. Smith's treating opinions, and significant weight to Dr. Wood's consultative opinion. In addition to the reasons described above, the ALJ discounted the treating opinions because they were inconsistent with two opinions rendered by consultative examiner Dr. Wood, who imposed significantly fewer limitations after performing two physical examinations that were normal.[4] For example, Dr. Billies limited Lundby to lifting up to 20 pounds occasionally and 5 pounds frequently,[5] and Dr. Smith imposed 5 pound limitations both occasionally and frequently. Dr. Wood, however, opined that Lundby could frequently lift or carry 20 pounds and frequently handle 50 pounds. Dr. Billies' and Dr. Smith's sitting and standing limitations, which were identical, were also in stark contrast to Dr. Wood's.[6] The MJ properly found that the ALJ explained why he assigned greater weight to Dr. Wood's opinion, i.e., "because it [wa]s based on

---

[3] Whether Lundby's testimony by itself supports an RFC of light work is irrelevant since in crafting the RFC, the ALJ relied on the testimony in conjunction with other medical evidence.
[4] In his objections, Lundby says that the consultative examiner Dr. Wood examined Lundby only one time, but the record shows that two examinations were performed by Dr. Wood – once in November 2013, and a second time in April 2015. (MJRR at 3, 14-15).
[5] Dr. Billies' second statement reduced the occasional limit from 20 pounds to 10 pounds.
[6] While Dr. Billies and Dr. Smith limited Lundby to standing and walking for 15 minutes at a time and 60 minutes in an 8-hour workday, Dr. Wood said that Lundby could stand and walk for 2 hours at a time and 2 hours total. Further, while Dr. Billies and Dr. Smith limited Lundby to sitting for 1 hour at a time and 2 hours in an 8-hour workday, Dr. Wood said that he could sit for 2 hours at a time and 4 hours in an 8-hour workday.

12

her thorough examination[s]." (MJRR at 15). See Dyer v. Soc. Sec. Admin., 568 F. App'x 422, 428 (6th Cir. 2014) ("An administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records."). Thus, the ALJ gave good reasons for affording Dr. Wood's opinion greater deference than the two treating opinions.

Finally, the ALJ explained why his RFC limitations did not correlate identically to those imposed by the three physicians. As a preliminary matter, the RFC determination is one exclusively reserved to the ALJ. Further, simply because the RFC did not adopt the exact limitations of any opining physician does not mean that it was impermissibly based on the ALJ's own independent evaluation of the evidence. As previously stated, the ALJ cited objective medical evidence, contradictory testimony by Lundby, and an inconsistent opinion by Dr. Wood, as reasons why the treating opinions' limitations were given little weight. Further, in explaining his handling of the limitations imposed by Dr. Wood's opinion, the ALJ explained that he "g[ave] additional consideration to [Lundby's] testimony regarding his abilities to stand or walk for up to three hours, and regarding his ability to sit, as well as [his] subjective pain complaints." (MJRR at 15). Thus, the ALJ explained the limitations in his RFC by citing to substantial evidence in the record, and it should not be disturbed merely because the same evidence could have supported a different decision. See Mullen, 800 F.2d at 545.

In sum, the Court finds that the weight the ALJ assigned to the treating source and consultative opinions is supported by substantial evidence, and Lundby's first objection lacks merit.

**B. Second Objection**

Lundby's second objection is that the ALJ failed to acknowledge and incorporate upper extremities restrictions imposed by three medical opinions in his RFC. However, the MJ properly concluded that the ALJ did not err in omitting limitations on fine and gross manipulation and reaching overhead from Lundby's RFC assessment. "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547 (6th Cir. 2002). Instead, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." Id. at 548. The ALJ has met these requirements.

The ALJ addressed the treating source opinions on Lundby's upper extremities and provided good reasons for rejecting them. As indicated above, the ALJ properly discounted Dr. Billies' and Dr. Smith's opinions, which included their limitations on Lundby's upper extremities. For example, the ALJ cited "unremarkable objective evidence," including x-rays showing only minimal osteoarthritis in Lundby's upper extremities. (MJRR at 14). In addition, the ALJ cited 2014 x-rays showing that Lundby's left shoulder had only minimal joint irregularity. Id. The ALJ also cited physical examinations that were "repeatedly . . . essentially normal," finding that Lundby had a full range of motion in his hands, fingers, and wrists, and Dr. Wood's consultative opinion, finding that Lundby could perform a full range of postural, gross, and fine motor activities. (MJRR at 19; Doc. 12 at 19). Finally, the ALJ cited Lundby's own contradictory testimony, including from 2014 when he received a wellness examination and told the doctor he had

no health concerns and that pain medications provided him with 70-80% relief. Thus, the MJ cited to actual evidence considered, articulated, and resolved by the ALJ in reaching his RFC determination, and was not based on the Court's own *post hoc* rationalization.

Further, both the MJ and the ALJ recognized the limitations Dr. Wood imposed on Lundby's upper extremities, and the MJ properly found that the ALJ considered them in crafting his RFC. The MJ noted that Dr. Wood limited Lundby to occasional pushing and pulling bilaterally, and frequent handling, fingering, and feeling. (MJRR at 17-18). The ALJ also explicitly cited these upper extremities restrictions when he explained why he gave significant weight to Dr. Woods' opinion. (Doc. 12 at 20). Finally, the ALJ asked the Vocational Expert to list jobs Lundby would be capable of doing if he "was limited to occasional handling and fingering." (Doc. 19 at 14). While this Court's role is limited to the review of agency action, it may consider all evidence in the record and before the ALJ, Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993), regardless of whether or not the ALJ actually cited to it. Walker v. Sec'y of HHS, 884 F.2d 241, 245 (6th Cir. 1989). Thus, the Court finds that the MJ reasonably concluded that the ALJ considered all three physicians' upper extremities limitations in crafting his RFC.

### C. Third Objection

Lundby's third objection, that the ALJ "simply reviewed Dr. Kirzner's examination findings and ascribed different weight or significance to them than had the doctor," is also without merit.

The MJ correctly found that the ALJ did not "play doctor" in establishing Lundby's mental limitations. The ALJ properly discounted Dr. Kirzner's "marked" conclusions because they were inconsistent with his (Dr. Kirzner's) own examination findings,

15

Lundby's statements, and another medical source's findings. Dr. Kirzner found that Lundby had moderate to marked difficulties carrying out instructions because he had difficulties understanding and remembering. However, in discounting this limitation to moderate, the ALJ cited Dr. Kirzner's own examination findings that Lundby could still manage his own resources, drive, understand instructions, and pay attention.[7] Also, Dr. Kirzner's medical source statement opined that Lundby would have marked difficulties in carrying out instructions if they were complex, but only moderate difficulties if they were simple. The ALJ incorporated this distinction in his RFC determination.[8]

Dr. Kirzner found that Lundby had marked difficulties in interacting appropriately with the public because he had impaired social activities. However, in discounting this limitation to moderate, the ALJ cited Lundby's function report, where Lundby stated that he gets along well with family, friends, and neighbors, and has no problems getting along with authority figures. Further, the ALJ cited a mental status examination conducted by mental health provider Erin Crow. Although Crow found that Lundby was emotionally distressed, anxious, and depressed, she also found that he was cooperative, had normal perception and unremarkable thought processes, exhibited fair judgment and impulse control, and had good insight. Thus, the ALJ based his determination of Lundby's mental limitations on Dr. Kirzner's opinion, discounted by substantial contradictory evidence in the record, and not on his own independent evaluation of the evidence.

---

[7] The ALJ also cited Lundby's ability to remember numerals and objects, perform serial sevens, and perform other mental mathematical calculations during his consultative examination with Dr. Kirzner.

[8] Dr. Kirzner opined that Lundby could "retain and follow through with simple, structured, and repetitive tasks," (Doc. 12 at 21), and the ALJ's RFC limited Lundby to "simple, routine, repetitive tasks." (MJRR at 4).

## VI. CONCLUSION

For the reasons stated above, the MJRR is ADOPTED, Lundby's objections are OVERRULED, Lundby's motion for summary judgment is DENIED, the Commissioner's motion for summary judgment is GRANTED, and the ALJ's decision denying benefits is AFFIRMED. The ALJ's decision is supported by substantial evidence and will not be disturbed.

SO ORDERED.

                                                s/Avern Cohn
                                                      AVERN COHN
                                        UNITED STATES DISTRICT JUDGE

Dated: March 28, 2018
Detroit, Michigan